# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Donald Wayne Troutwine (S-09709), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 16 C 50251 |
| | ) | |
| Lt. Gary Kuhse, et al., | ) | |
| | ) | |
| Defendants. | ) | Judge Frederick J. Kapala |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donald Wayne Troutwine, brings this civil rights action under 42 U.S.C. § 1983 against six correctional officers of the Illinois Department of Corrections working at the Dixon Correctional Center. This motion concerns the conduct of three officers, defendants Gary Kuhse, Jeffrey Schipper, and Mark Andreas.[1] Plaintiff claims that a group of officers, led by Andreas, used excessive force and caused him severe injuries. In the course of the excessive force, plaintiff claims that Andreas committed a battery by forcibly inserting an object into plaintiff's rectum. After the incident, plaintiff claims that Kuhse and Schipper were deliberately indifferent to his medical need for attention to injuries he sustained from the incident, specifically related to his right knee. Plaintiff also claims that Kuhse and Schipper retaliated against him for reporting the incident by denying him toilet paper in his cell for 19 days—two of which Schipper turned off the water flowing into plaintiff's sink and toilet—that resulted in constitutionally insufficient confinement conditions. Defendants move for partial summary judgment. For the reasons stated below, defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The facts are taken from the pleadings, the parties' statements of undisputed facts,[2] the parties' responses thereto, and the evidence submitted in support. All the facts detailed are undisputed unless otherwise stated.

Plaintiff was an inmate at Dixon Correctional Center. On or about June 10, 2014,

---

[1] At various times, the parties misspell Andreas' name as "Andres." The court will refer to the spelling Andreas used in his deposition.

[2] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. Amnions v. Aramark Uniform Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. See Schrott v. Bristol-Myers Squibb Co., 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).

correctional officers at Dixon were transferring plaintiff from his cell in Housing Unit No. 33 to X House, the area of the prison that contains segregation units. When plaintiff was put into a van, plaintiff became aggravated and kicked out the window of the van. After restraining plaintiff in the van, the officers drove plaintiff to X House. Several officers grabbed plaintiff out of the van and brought him to one of the "crisis cells" of X House. The remaining facts in this paragraph are disputed by defendants. The officers slammed plaintiff face-down onto a metal bedframe. After plaintiff fell to the floor, an officer held his foot on plaintiff's neck so that plaintiff could not see any of the officers in the cell. The officers asked him questions and would twist and jump on his knee that was also held down if they did not like his answers. They twisted his knee and told him they "ought to break it." One of the officers then said something to the effect that "there were five homosexuals in the cell" and they would "have their way" with him. The officers tore off all of plaintiff's clothes while his neck was pinned down and then several officers, including Andreas, forced an unknown object into his rectum for a few seconds before someone pulled it out. Plaintiff claims that Andreas was the individual who inserted the object into his rectum and that Andreas was the "main one doing all the talking" throughout the battery, implying that Andreas was leading and participating in the battery. It is undisputed that plaintiff could not see who inserted the object into his rectum, given that his neck was bent in such a way that he was facing the floor and could not see any of the officers.

After the battery, plaintiff would remain in segregation—the same crisis cell where he was first taken and then a different cell within segregation—from at least June 10, 2014 to June 29, 2014.[3] During that time, plaintiff claims, and defendants dispute, that Schipper and Kuhse retaliated against plaintiff because plaintiff, at some point, told other correctional officers about the battery. Plaintiff claims that they retaliated against him in two main ways. First, plaintiff repeatedly asked Kuhse, and at one time asked Schipper, for toilet paper; plaintiff claims his requests were refused throughout the 19 days. Second, plaintiff claims that Schipper turned off water access for his cell for two days, thereby depriving him of drinking water and, presumably, a functioning toilet. Defendants dispute that they denied him toilet paper or turned off his water.

On July 28, 2016, plaintiff filed a complaint against Kuhse, Shipper, Andreas, and other officers that are not implicated by this motion. Plaintiff amended that complaint several times. The operative fifth amended complaint ("FAC") contains the following claims: (1) "overarching" cruel and unusual punishment under § 1983 (which plaintiff breaks down into two theories that are discussed below) against all defendants (Count I); (2) battery under Illinois common law against Andreas (Count II);[4] and (3) excessive force under § 1983 against Andreas and another defendant

---

[3]It is not clear from plaintiff's allegations that plaintiff was withheld toilet paper for 19 days. The allegation simply says "From June 10, 2014 through June 29, 2014, Plaintiff endured retaliation from the segregation unit guards as a result of reporting the assault. He was not given toilet paper and his cell water was turned off for two (2) days . . ." FAC ¶ 11. But plaintiff testified in his deposition that he did not have toilet paper for 19 days, and viewing the evidence in a light most favorable to plaintiff, the court will construe this fact to be as plaintiff's testified.

[4] The court will treat plaintiff's "sexual battery" claim as a claim for battery. Illinois' Gender Violence Act, 740 ILCS 82/10 provides a civil cause of action for victims of gender-related violence, but plaintiff does not invoke this statute or attempt to prove that Andreas' battery was "gender-related."

2

(Count III). Defendants move for partial summary judgment, seeking summary judgment on Count I as to Kuhse and Shipper and summary judgment on Count II as to Andreas.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818-19 (7th Cir. 2015). "A genuine issue exists as to any material fact when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fidlar Techs. v. LPS Real Estate Data Sols., Inc., 810 F.3d 1075, 1079 (7th Cir. 2016). Further, the object of summary judgment procedures "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The court must consider the record evidence in the light most favorable to the nonmovant and draw all reasonable inferences from that evidence in favor of the nonmovant. Skiba v. Ill. Cent. R.R. Co., 884 F.3d 708, 717 (7th Cir. 2018). The moving party initially bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Spierer v. Rossman, 798 F.3d 502, 508 (7th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis omitted).[5]

### A. Count I Against Kuhse and Schipper

Defendants Kuhse and Schipper seek summary judgment on plaintiff's only remaining claim against them, Count I, for violation of his rights under the Eighth Amendment. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997). It allows suit against any person who, acting under color of state law, deprives a prisoner of his Eighth Amendment rights. Berry v. Peterman, 604 F.3d 435, 439 (7th Cir. 2010).

---

[5]Defendants consistently maintain in their briefs that the court should discount much of plaintiff's deposition testimony for any facts that plaintiff references that are not explicitly enumerated in Defendant's Statement of Material Facts. However, defendants cite to no authority to support this contention, and the court rejects it.

Deliberate indifference occurs when a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). Deliberate indifference to serious medical needs or inhumane prison conditions "constitutes the unnecessary and wanton infliction of pain" such that a prisoner may bring a cause of action against a prison official. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Seventh Circuit has distilled the language from Estelle into a two-pronged test, requiring prisoners to prove (1) an objective component, a serious medical condition, and (2) a subjective component, an official's deliberate indifference to that condition, to set out a claim for deliberate indifference under § 1983. See Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012). "Whether one characterizes the treatment received by the prisoner as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle." Wilson v. Seiter, 501 U.S. 294, 303 (1991).

Plaintiff puts forth two theories for his deliberate indifference claim. First, plaintiff argues that Kuhse and Schipper were deliberately indifferent to his seriously injured right knee as a result of the assault by Andreas and other correctional officers. Second, plaintiff argues that Kuhse and Schipper were deliberately indifferent to the inhumane conditions of his confinement. The court takes each theory in turn.

**1. Medical Need**

First, plaintiff argues that there is a genuine issue of material fact as to whether Kuhse and Schipper were deliberately indifferent to plaintiff's serious medical need regarding the various injuries resulting from the correctional officers' excessive force against him. Kuhse and Schipper do not argue that plaintiff has not satisfied the objective component of the Estelle test, and viewing the facts in a light most favorable to plaintiff, the court concludes that plaintiff demonstrates facts sufficient to create a triable question as to whether the injuries sustained in his knee, rectum, and otherwise satisfy the objective component.

To satisfy the subjective component of a claim for deliberate indifference to medical needs, a plaintiff must demonstrate that (1) the official had "subjective knowledge of the risk to the inmate's health"; and (2) "the official . . . disregard[ed] that risk." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). "[T]he subjective prong of the deliberate indifference claim . . . requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable." Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015). In other words, deliberate indifference claims require "actual knowledge of an impending harm," Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010), a rule rooted in the well-established principal that individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation," Matz v. Klotka, 769 F.3d 517, 528 (7th Cir. 2014).

Even viewing the facts in a light most favorable to plaintiff, the record contains no facts that Kuhse or Schipper had actual knowledge that plaintiff in fact required medical attention. It is not enough that plaintiff had "obvious injuries" that a reasonable person should have inferred required medical attention; defendants must have actual knowledge of those injuries. Haley v. Feinerman, 168 Fed. App'x 113, 117 (7th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (noting that the deliberate indifferent claim requires not just an obvious injury but subjective

4

awareness of that injury). Nothing in the record suggests that Kuhse or Schipper participated in the alleged assault or otherwise had actual knowledge that plaintiff had injuries that required medical attention. Generally a plaintiff claiming deliberate indifference typically establishes the requisite knowledge by showing that he complained to officials about a specific threat to his safety. Johnson v. United States, No. 14 C 10461, 2018 WL 5279303, at *3 (N.D. Ill. Oct. 24, 2018) (citing Gevas, 798 F.3d at 480). But here, it is undisputed that plaintiff did not complain of medical need to Kuhse or Schipper. The record is devoid of facts suggesting that Kuhse or Schipper were actually aware that plaintiff's injury was serious enough to require medical attention. At most, the record could support the inference that Kuhse and Schipper had constructive knowledge of plaintiff's need for medical attention, given that Kuhse and Schipper worked in X House where the assault took place. But as noted above, constructive knowledge is not sufficient for a deliberate indifference claim based on medical need. Thus, the court rejects plaintiff's theory for Count I based on deliberate indifference to medical need as to Kuhse and Schipper.

## 2. Conditions of Confinement

Plaintiff also claims that Kuhse and Schipper were deliberately indifferent to inhumane conditions in his prison cell by turning off his water for two days and depriving him of toilet paper for over two weeks.[6] Under the Eighth Amendment, the objective component requires that prison inmates be confined in conditions that are humane. Farmer, 511 U.S. at 832. However, they are not entitled to conditions that are pleasant or comfortable. Rhodes v. Chapman, 452 U.S. 337, 438 (1981) ("To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). Accordingly, inmates are at least entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir. 2009), and a constitutional violation may be established with the failure to provide these conditions in combination where each condition alone would not satisfy the standard but combine to produce the deprivation of a single, identifiable human need, such as "a low cell temperature at night combined with a failure to issue blankets." Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006) (citing Wilson, 501 U.S. at 304 (1991)). Courts look at the duration and severity of inadequate conditions to determine whether the purported deliberate indifference rises to the level of a violation of the Eighth Amendment. Dixon v. Godinez, 114 F.3d 640, 643 (7th

---

[6] It is within the court's discretion to allow or disallow amendments to a complaint brought through arguments presented for the first time in a brief opposing summary judgment. See Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996). Here, the court does not see any unfairness in allowing plaintiff to argue a conditions of confinement theory for his "overarching claim of cruel and unusual punishment"—nor do Kuhse and Schipper argue that there is any. Plaintiff alleged the facts pertaining to the conditions of confinement theory in the complaint. FAC ¶¶ 8, 11. After plaintiff invoked this theory explicitly in his opposition to this motion, Kuhse and Schipper had a chance to, and did, respond to this theory in their reply brief, stating that "Plaintiff goes on to make the claim, wholly unsupported by any citation to case law or statute, that 'toilet paper and water are undoubtedly considered life necessities.'" Plaintiff's deposition contains enough testimony that there is enough evidence in the record for Kuhse and Schipper to have refuted. And, in any event, plaintiffs are not required to plead specific legal theories in their complaints. Avila v. CitiMortgage, Inc., 801 F.3d 777, 783 (7th Cir. 2015); Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 664 (7th Cir. 2011) (noting that a plaintiff is "not required to plead with precision legal theories or detailed facts"); see also Vincent v. City Colleges of Chi., 485 F.3d 919, 923 (7th Cir. 2007) ("Factual detail comes later—perhaps in response to a motion for a more definite statement . . . perhaps in response to a motion for summary judgment.").

5

Cir. 1997).

First, plaintiff claims that he was deprived of drinking water for two days when Schipper turned off his water.[7] "Prison inmates have a basic right to adequate drinking water." Davis v. Biller, No. 00 C 50261, 2003 WL 22764872, *2 (N.D. Ill. Nov. 19, 2003) (Reinhard, J.). However, a prisoner's lack of drinking water may be so temporary that it constitutes only a de minimis imposition unworthy of Section 1983 relief." Williams v. Collins, No. 14 C 5275, 2015 WL 4572311, at *4 (N.D. Ill. July 29, 2015); compare id. (lack of access to drinking water for two weeks stated a claim for deliberate indifference) with Tesch v. Cnty. of Green Lake, 157 F.3d 465, 476 (7th Cir. 1998) ("less than two full days" of deprived access to drinking water in his cell not sufficient) and Easter v. Cooper, No. 91 C 4530, 1995 WL 109343, at *3 (N.D. Ill. Mar. 10, 1995) (seven days not sufficient); see also Mims v. Hardy, No. 11 C 6794, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (no violation where plaintiff had no access to water in his sink for 45 days but had access to water in other parts of the prison and was given beverages three times a deal with his meals). Accordingly, "the Constitution requires only that an inmate not be denied water or other beverages for an extended period of time." Downs v. Carter, No. 13 C 3998, 2016 WL 1660491, at *8 (N.D. Ill. Apr. 27, 2016) (objective component satisfied when evidence suggested that plaintiff only "received milk with his breakfast and otherwise had minimal access to liquids since drinks are not served with lunch and dinner and the guards did not supply him with sufficient water or ice" during elevated temperatures and humidity in prison); Muhammad v. Wilson, No. 05 C 743, 2006 WL 2413710, at *2-3 (N.D. Ill. Aug.16, 2006) (broken plumbing for seven days where plaintiff was given three meals a day, including beverages with each meal, "was an inconvenience" and "did not amount to a constitutional violation").

Plaintiff testified that, over the course of the two days he was without access to drinking water from the sink in his cell, that the porter "slip[ped] me extra milk in the morning and extra juice with the dinners. I told them I did not have no water. I did not have anything to drink in there. They gave me a couple of extra juices and a couple of extra milks." Pl.'s Dep. 114:10-15. But plaintiff does not show that he suffered any dangerous level of thirst as a result of only drinking juice and milk for two days. The undisputed evidence is that plaintiff was receiving beverages with his meals during those two days. The Seventh Circuit recognizes Eighth Amendment violations where prisoners are deprived of running water only in extreme circumstances. See, e.g., Vinning–El v. Long, 482 F.3d 923, 923-24 (7th Cir. 2007) (summary judgment reversed where prisoner was placed in a cell with blood and feces on the walls, without running water or sanitation supplies). Schipper appears to have acted harshly by allegedly turning off plaintiff's water, but the court finds that this harsh treatment did not by itself rise to the level of "cruel and unusual punishment" under the Eighth Amendment as a matter of law when plaintiff was only denied drinking water from his cell sink for two days but had access to beverages with his meals. However, because separate conditions may be combined to satisfy plaintiff's allegations at this stage of litigation, the court will consider these facts in light of plaintiff's next argument below.

Plaintiff also claims he was denied toilet paper for the duration of the time he was in

---

[7]The record is silent as to whether Kuhse directed Schipper to turn off plaintiff's water, and Kuhse testified that he did not know that plaintiff's water had been turned off.

6

segregation. Plaintiff requested toilet paper from Schipper once, Pl.'s Dep. 111:11, and from Kuhse several times, id. 111:16, during the 19 days he was held in segregation, and was denied each time. Both Kuhse and Schipper deny that they denied plaintiff toilet paper at all. Thus, there is a dispute of fact as to whether Kuhse or Schipper denied plaintiff toilet paper. But the threshold issue for the court is whether a reasonable jury could conclude that, viewing the evidence in a light most favorable to plaintiff, the complete deprivation of toilet paper for 19 days violates the constitution.

"Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement. The constitutional test requires courts to look to the evolving standards of decency that mark the progress of a maturing society." Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (5 days without toilet paper not a violation even where other inadequate conditions persisted). Adequate confinement means that the conditions of confinement must meet "the minimal civilized measure of life's necessities." Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006). Further, an "adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016). But the "length of time that the prison exposes an inmate to a harm may affect whether the exposure violates the Eighth Amendment." Myers v. Ind. Dep't of Correction, 655 F. App'x 500, 504 (7th Cir. 2016) (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). Thus "a condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." Mims v. Hardy, No. 11 C 6794, 2013 WL 2451149, at *10 (N.D. Ill. June 5, 2013) (quoting Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir.1997)).

"A lack of . . . sanitation can violate the Eighth Amendment." Gillis, 468 F.3d at 493. The Seventh Circuit has held that prison officials are constitutionally required to supply hygienic supplies "sufficient to meet basic needs." Gray v. Hardy, 826 F.3d 1000, 1006 (7th Cir. 2016); see also James v. O'Sullivan, 62 Fed. App'x 636, 639 (7th Cir. 2003) (listing cases that reversed dismissals of claims based on deprivation of personal hygiene items); Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999). As for toilet paper specifically, however, the Seventh Circuit has yet to hold that a particular amount of time without toilet paper would violate the Eighth Amendment, though in Dye v. Lomen, the Seventh Circuit held that 2-3 days without toilet paper did not violate the Eighth Amendment, particularly where no other unsuitable conditions were present. 40 Fed. App'x 993, 996 (7th Cir. 2002). Other circuits have found that the deprivation of toilet paper for more than a few days could be a sufficiently serious deprivation to survive summary judgment. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (collecting circuit court cases); see also Board v. Farnham, 394 F.3d 469, 479 (7th Cir. 2005) (holding that the deprivation of a hygienic product for a pretrial detainee violates the constitution when there is a threat of future medical and physical harm).

The court finds that a reasonable jury could conclude that 19 days is a considerably long time to be denied toilet paper and deprives an inmate of one of "the minimal civilized measures of life's necessities." Gillis, 468 F.3d at 491; see also id. at 492 ("Determining whether plaintiff's constitutional rights have been violated requires a fact-intensive inquiry under constitutional standards."). Unlike in Dye or Harris, plaintiff's deprivation of toilet paper was for almost three

7

weeks—a prospect that the court hazards to guess the average citizen would deem plainly unsanitary. True, the duration of the deprivation in this case might be closer to the 3 or 5 days in Dye or Harris respectively than the 259 days of being in segregation "completely naked, with no clothing, shoes, bedding, linens, mattress, mail or legal materials" as the plaintiff was in Townsend v. Cooper, 759 F.3d 678, 687 (7th Cir. 2014) (analyzing Gillis with respect to due process claims). Considering the record evidence in the light most favorable to plaintiff the court assumes that plaintiff was deprived of toilet paper for 19 days and the court is unwilling to rule as a matter of law that this deprivation in conjunction with the other facts pursuant to plaintiff's conditions of confinement does not amount to an Eighth Amendment violation. Rather, a reasonable jury believing that Kuhse and Schipper denied plaintiff toilet paper will be in the best position to weigh each party's testimony of the conditions of the crisis cell and the effect that Kuhse and Schipper's denial of toilet paper had on plaintiff's sanitation and hygiene. Mims, 2013 WL 2451149, at *11 (whether nonfunctioning sink, broken toilet, and other substandard conditions violated the constitution when done for 45 days); Patterson v. Kistousky, No. 07 C 5731, 2010 WL 5490653, at *3 (N.D. Ill. Dec. 30, 2010) (finding dispute of fact as to whether electrical shocks received over course of two months that harmed prisoner while showering violated the constitution).

This was, of course, all in the context of plaintiff "suffer[ing] excruciating pain" throughout the 19 days as a result of the officers' claimed excessive force. FAC ¶ 20. Further, due to Schipper turning off the water running to his cell sink and toilet, plaintiff had no access to water for two days, which could have otherwise aided plaintiff in maintaining his hygiene without toilet paper. Indecent conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise. Wilson, 501 U.S. at 304. Plaintiff has done enough to raise a genuine dispute of material fact as to whether the 19-day denial of toilet paper in combination with no water for 2 days while he was in pain due to serious physical injuries at the hands of allegedly violent correctional officers violated plaintiff's constitutional rights. And as the deprivation of hygiene products relates to the identifiable human need to be sanitary, the jury will determine whether the deprivation in combination with these other conditions violated his constitutional right not to suffer "cruel and unusual punishment."

Moving on to the subjective component, in conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety, which requires the plaintiff to demonstrate that the official (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually draw the inference. Granville v. Dart, No. 09 C 2070, 2011 WL 892751, at *8 (N.D. Ill. Mar. 11, 2011). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

Unlike plaintiff's argument that defendants had subjective knowledge of injuries that required medical attention—of which the court found there were none in the record—and viewing the facts in a light most favorable to plaintiff, there are facts that create a triable question as to defendants' awareness that plaintiff's hygienic condition may be serious. Plaintiff's theory of the claim is that Kuhse and Schipper retaliated against him for reporting other officers' treatment of him. Kuhse

8

testified that one of the prison's disciplinary policies is that inmates are only deprived of toilet paper during 10-minute suicide watches. Deposition of Gary Kuhse 50:17-18. Nevertheless, when plaintiff asked Schipper for toilet paper, plaintiff testified that "[h]e told me, hell no. He can't. He did not say he won't, he said he can't. . . . [T]hey are supposed to give you a roll a week." Pl.'s Dep. 110:21-22, 111:1-2. Schipper further retaliated against plaintiff by turning off his water, thereby preventing him from drinking or even cleaning himself in lieu of toilet paper. And when plaintiff asked Kuhse for toilet paper, Kuhse ignored him and on a different occasion told plaintiff he could keep plaintiff in segregation for "a long time if he wanted to." A reasonable juror could conclude not only that plaintiff's hygienic condition posed a serious health risk but also that Kuhse and Schipper, having deprived plaintiff of toilet paper and water for no reason other than retaliation, were aware that his hygienic condition in combination with the serious injuries he already had would have undoubtedly exacerbated his discomfort and could have potentially exacerbated the injuries themselves.

It is possible that even if a jury were to believe plaintiff that Kuhse and Schipper denied him toilet paper, a reasonable jury may nevertheless come to the conclusion that Kuhse and Schipper did not actually infer that there was a substantial risk of serious harm. This may depend, for example, on whether a particularly unsanitary scene developed before Kuhse and Schipper's eyes over the course of the 19 days such that they on how poor the hygienic state of plaintiff's cell was during these 19 days. While the record is unclear about Kuhse and Schipper's knowledge of plaintiff's injuries and hygiene, a jury will be in a better position at trial to determine Kuhse and Schipper's mental state over the course of these 19 days. With no focused argumentation by defendant on this point, the court denies summary judgment as to the conditions of confinement claim, Count I against Kuhse and Schipper.

### B. Count II Against Andreas

In Count II, plaintiff brings a claim for battery against Andreas for allegedly inserting a foreign object into plaintiff's rectum while plaintiff allegedly experienced violence at the hands of various correctional officers. In Illinois, a claim for battery requires (1) the intent to cause harmful or offensive contact with the person of another that (2) results in harmful contact. Cohen v. Smith, 269 Ill. App. 3d 1087, 1090-91 (7th Cir. 1995). Battery also encompasses "nonharmful" but offensive contact that "offends a reasonable sense of personal dignity." Id. at 1091.

While plaintiff never saw any of the officers during the battery, plaintiff knows it was Andreas doing this talking because when Andreas stayed in the cell after the battery and spoke to plaintiff, Andreas' voice was the same voice plaintiff heard throughout the battery, the "main one doing all the talking." Andreas attempts to back out of his involvement in the incident by claiming that plaintiff never saw him. But it is well established in the Seventh Circuit that a law enforcement or correctional officer "may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." Flores v. Giuliano, No. 12 C 162, 2014 WL 3360504, at *7 (N.D. Ill. July 9, 2014) (citing Sanchez v. City of Chicago, 700 F.3d 919, 925–26 (7th Cir. 2012)).

This same rationale applies to the Illinois common law battery alleged in Count II because the Illinois Supreme Court has adopted the Restatement (Second) of Torts § 876 construction for

9

determining whether defendants have engaged in concerted action to commit a tortious act. Simmons v. Homatas, 236 Ill. 2d 459, 483 (2010). Andreas' argument is at odds with basic principals stated in § 876: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him." RESTATEMENT (SECOND) OF TORTS § 876. Parties act in "concert" when they "act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." Id. cmt. on clause (a), a. Viewing the facts in a light most favorable to plaintiff, there is a jury question as to whether Andreas was acting in concert with the alleged tortfeasing correctional officers. Plaintiff's head was pinned down by one officer, obscuring his vision of his attackers. Other officers jumped down on his knee, causing plaintiff excruciating pain. And according to plaintiff, Andreas either inserted or encouraged and enabled the insertion of an object into plaintiff's rectum to happen. That Andreas may not have been the officer to actually insert the object is not required as a matter of law. Accordingly, the court denies defendants' motion for partial summary judgment as to Count II.

### III. CONCLUSION

For the foregoing reasons, defendants' partial motion for summary judgment is granted in part and denied in part. The court rejects plaintiff's deliberate indifference to medical needs theory for Count I but denies the motion on the basis of plaintiff's conditions of confinement theory for Count I. The motion with respect to Count II is denied.

Date: 3/15/2019                              ENTER:

                                             _____
                                             FREDERICK J. KAPALA

                                             District Judge